### HOLLIDAY v. POSTON & SON.

1. EQUITY—JURISDICTION—CLAIM AND DELIVERY.—MAGISTRATE COURT has no jurisdiction in equity and cannot entertain defense to action in claim and delivery, that mortgagor having obtained a chattel after execution of mortgage, thereby gives title thereto to mortgagee. MR. JUSTICE GARY *holds this is not equitable defense.*

2. CLAIM AND DELIVERY.—Action in claim and delivery may be maintained against defendant who has *wrongfully* disposed of chattel without demand and refusal before suit or before disposition. MR. CHIEF JUSTICE McIVER *dissents.*

Before GAGE, J., Williamsburg, May, 1900. Affirmed.

Action in claim and delivery by J. W. Holliday against S. Poston & Son. From judgment on Circuit reversing magistrate judgment, defendants appeal.

*Messrs. Gilland & Kirk,* for appellants, cite: *As to property acquired after execution of mortgage:* 14 S. C., 112; 18 S. C., 157; 10 S. C., 452; 43 S. C., 47; 45 S. C., 145; 2 Strob., 309; Spear Eq., 417; 65 N. Y., 459; 10 H. L. Cas., 191; 45 S. C., 145; 10 S. C., 542; 15 Ency., 749; 35 Ark., 305. *Mortgagor may retain possession by consent of mortgagee after condition broken, without jeopardising title of mortgagee:* 21 Stat., 799; 1 S. C., 133. *Defendant must be in possession of the chattel before suit in claim and delivery:* 87 Ind., 549; 99 Ind., 404; 2 Ind., 229; 134 Mass., 381; 63 N. C., 504; 21 Mo. App., 150; 106 Mass., 599; 4 Gray, 441; 54 Me., 546; 20 Ency., 1045; Code, 71, sub. 11; 22 Ark., 76; 27 Ark., 184; 7 Mo. App., 66; 25 *Id.*, 428; 11 S. C., 32; 12 S. C., 45; 16 S. C., 371; 45 S. C., 388; 40 S. C., 538; 47 S. C., 488; 48 S. C., 421; 2 Strob. Eq., 370; 51 S. C., 42.

*Mr. Walter H. Wells,* contra, cites: *After-acquired chattel does not pass under mortgage in absence of provisions therein to that effect:* 14 S. C., 114. *As to demand and re-*

*fusal before action:* 11 S. C., 327; 20 Ency., 1059; 46 S. C., 199.

March 18, 1901. The opinion of the Court was delivered by

MR. JUSTICE POPE. Plaintiff sued defendants in the magistrate's court in claim and delivery of a mare called "Sallie," valued at $50. At the trial, defendant entered a general denial. After hearing testimony on both sides, the magistrate rendered judgment in favor of defendants. An appeal was taken from this judgment to the Court of Common Pleas for Williamsburg County. The appeal came on to be heard before his Honor, Judge Gage, who gave judgment in favor of plaintiff, thereby reversing the judgment of the magistrate. The text of the decision of the Circuit Judge is as follows: "This is an appeal by plaintiff from the judgment of a magistrate. The suit is for the recovery of the possession of a roan mare, called 'Sally.' The defendants had seized the mare claiming her to be covered by a mortgage from one Calvin Cooper to defendants, dated in January, 1898; and the defendants had sold her to another person before the commencement of this action. The defendants' mortgage describes not a roan, but a bay mare. There was much controversy in the testimony about whether this mare in dispute is a roan or a bay in color. And if that was the sole issue, I should not disturb the judgment. But plaintiff claims under a mortgage made to him by Calvin Cooper in February, 1900. I am satisfied from the testimony that the mare in issue, whatever be her color, was not owned or possessed by Calvin Cooper in January, 1898, when he mortgaged certain stock to defendants; but he secured her some time thereafter. If this be so, defendants' mortgage cannot cover her. The defendants made the question that the court had no jurisdiction of the subject matter, because it (the mare) had passed from the ownership and possession of defendants before suit brought. The defendants converted the title when they sold her wrong-

fully, and action lies against them for the mare, or her value.

"My judgment is, that the judgment of the magistrate be reversed, and that plaintiff have judgment for the mare, or her value, to wit: $50."

From this judgment of the magistrate defendants now appeal to this Court on the following grounds:

"Because his Honor erred in holding as follows: 'I am satisfied from the testimony that the mare in question, whatever be her color, was not owned or possessed by Calvin Cooper in January, 1898, when he mortgaged certain property to defendants, but that he secured her some time thereafter. If that be so, defendants' mortgage cannot cover her.' Whereas, he should have held that although he was satisfied that Calvin Cooper did acquire the mare some time (about six weeks) after the making of the mortgage to Poston & Son, yet she was in fact and law covered by the mortgage to Poston & Son.

"II. Because his Honor erred in holding as follows: 'The defendants made the question that the court had no jurisdiction of the subject matter because it (the mare) had passed from the ownership and possession of defendants before suit brought. The defendants converted the title when they sold her wrongfully and action lies against them for the mare or her value.' Whereas, he should have held that the mare in dispute having passed from the possession of the defendants before suit brought, the action for claim and delivery did not lie against defendants for the possession of the chattel."

We will now consider the exceptions in their order. We cannot sustain the first ground of appeal, because the court of magistrate is by sec. 21, of art. V., of our present State Constitution, denied all jurisdiction in chancery cases. So that we must view the judgment of the Circuit Court as covering only claims at law, and not in equity, set up in this action brought in a magistrate's court. This being so, the view which was so ably presented by the appellant's attorney, that although the mare in question was

not owned by Calvin Cooper when in January, 1898, he executed his mortgage to Poston & Son (the appellants here), yet he intended to include her in said mortgage, and equity will enforce such intention though not embodied in the instrument itself cannot be maintained. The Circuit Judge found as a fact that Calvin Cooper did not own the mare and did not include the same in the mortgage to defendants. As was well said by Chief Justice McIver, in *Parker* v. *Jacobs,* 14 S. C., 114: "There can be no doubt that the rule *at law* is that it is necessary to the validity of the mortgage that the mortgagor should have a present property, either actual or potential, in the thing mortgaged," citing 1 Jones on Mortgages, sec. 149.

The second exception cannot be sustained, because the Circuit Judge has found as a fact that the defendants wrongfully sold her (the mare), and this being his conclusion of fact (over which finding of fact we have no control), it causes this case to fall into the class of cases, such as *Ladson* v. *Mostowitz,* 45 S. C., 388; *Dudley & Caston* v. *Green,* 46 S. C., 199; *Finley* v. *Cudd,* 42 S. C., 122—where a judgment for the property in dispute, or its value in case a non-delivery cannot be had, was sustained even where the defendants had sold the property before suit brought.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed and the action be remanded to enforce such judgment of the Circuit Court.

Mr. Justice Jones *concurs in affirming the judgment of the Circuit Court.*

Mr. Justice Gary *concurring.* It is true, the Constitution, in the section mentioned by Mr. Justice Pope, provides that the jurisdiction of magistrates shall not extend to cases in chancery, but this is not a case in chancery. In the case of *Nix* v. *Harley,* 3 Rich. Eq., 382, the Court says: "He bought the slave, Jenney, to which the plaintiffs

were entitled in remainder after a life estate in their mother—remained in possession of the slave for more than four years—then resold the slave to the person from whom he had purchased—all without notice of any right in the plaintiffs. The bill states the fact that Millhouse had sold the slave, and prays that he may be required to pay to the plaintiffs the price received by him, with interest, and account for the hire before the sale. The claim of the plaintiffs is one strictly legal, which might be enforced by trover or assumpsit in the Court of Law, and no circumstance is stated requiring the peculiar 'interposition of this Court. It may be admitted to be a principal of equity, as stated by Chancellor Harper in *Bryan* v. *Robert,* 1 Strob. Eq., 343, and *Hill* v. *Hill,* 1 Strob. Eq., 23, that if a stranger in possession of my property undertakes to sell it, and delivers it accordingly, it is at my option either to pursue the property in the hands of the holder or to affirm the sale as the act of a voluntary agent, and recover the proceeds in his hands \* \* \*; plaintiffs proceed for the price of a single slave sold and nothing more; and we think that for such a demand, strictly legal in its character, he should pursue his remedy in the Court of Law." As the first exception is dependent upon a reversal of the facts, which cannot be reviewed by this Court, it was properly overruled.

·In considering the second exception, it will be well to keep in view the exact question it presents. It raises the single question whether an action for claim and delivery will lie when the chattel has·passed· from the possession of the defendant before suit brought. The question of demand or notice of the plaintiff's right before possession is delivered to another, is not raised by the exception. This question is conclusively settled by the case of *Dudley* v. *Green,* 46 S. C., 199, in which Mr. Justice Pope uses this language: "Defendant interposed motion for a nonsuit. This motion was granted by the Circuit Judge, as stated in the order, on the ground that plaintiffs have failed to prove possession of the property by the defendant,

as alleged in the complaint * * * We are not inclined to adopt any such rule. When a sheriff or any one else takes personal property belonging to another person and upon demand therefor refuses to surrender it, but on the contrary sells such property, the person thus wronged has his right of action against such sheriff for claim and delivery, and in event such delivery cannot be had, then for judgment for its value. It is idle to say the amount of the sale must be sued for." This ruling is fully sustained by the recent case of *Sinnott* v. *Feiock,* decided by the Court of Appeals of New York and published in *Central Law Journal* of 15th March, 1901, p. 210, in which the authorities are exhaustively reviewed, and to which there are copious notes by the *Central Law Journal.* In that case the Court uses this language: "Originally at common law the action of replevin lay to recover the possession of goods illegally distrained by a landlord. The primary object of the action was to recover possession of the specific chattels. The form of the action was so useful, that the action was extended to nearly all cases of unlawful caption or detention of chattels, where it was sought to recover the chattels in specie. In many cases, where the plaintiff was unable to obtain the return of the chattels, he could recover in the action their value. Still the action remained essentially one to recover the possession of chattels, as distinguished from actions of trespass or trover to recover damages for the seizure or for the value of the property * * * The question several times arose under the Code of Procedure, whether replevin could be maintained against a party who was not in possession, either actual or constructive, of the chattels, and was the subject of conflicting decisions in the Supreme Court, and in the Superior Court of New York. It finally came to this Court, in *Nichols* v. *Micheals,* 23 N. Y., 264. This was also a case of fraudulent purchase of goods, in which the defendant, before the action was brought, had voluntarily transferred the goods to his assignee. It was held that the action could be maintained. This decision was based on the authority of

the English cases, *Garth* v. *Howard,* 5 Car. & P., 346, and *Jones* v. *Dowie,* 9 Mees. & W., 19. In the case in this Court, Judge Selden wrote: 'The theory upon which these cases proceed is perfectly sound and applies directly to the present case. It is that where a person is in possession of goods belonding to another, which he is bound to deliver upon demand, if he, without authority from the owner, parts with that possession to one who refuses to deliver them, he is responsible *in detinue* equally with the party refusing. He contributes to the detention. It is the consequence of his own wrongful delivery. The action in such cases may properly be brought against both, because the acts of both unite in producing the detention.' This doctrine has been steadily adhered to by this Court. *Barrett* v. *Selling,* 70 N. Y., 492; *Dunham* v. *Troy Railroad Co.,* 42 N. Y., 543." Evidence of a demand by the plaintiff and the refusal of the defendant is one of the modes of establishing a tortious act on the part of the defendant, even when he gained possession of the chattel in the first instance without an act of wrong; but it is not the only manner in which it may be shown that the defendant committed an act of wrong after coming into possession of a chattel without violation of law. In the case of *Ladson* v. *Mostowitz,* 45 S. C., 388, the Court quotes with approval a part of the following language from *Harris* v. *Saunders,* reported as a note in 2 Strob. Eq., 370: "A conversion may arise either by a wrongful taking of the chattel, or by some other illegal assumption of ownership, by illegally using or misusing it, or by a wrongful detention; perhaps more accurately defined by another writer thus: 'a conversion seems to consist of any tortious act by which the defendant deprives the plaintiff of his goods either wholly or but for a time. Any act of the defendant inconsistent with the plaintiff's right of possession, or subversive of his right of property, is a conversion.' Here the defendant, after the accrual of the plaintiff's title and right of possession, having the slave in his own hands, by the purchase from one who had no title, sold him to an-

other, who carried him beyond the plaintiff's reach, and put
the price in his pocket.    If this be not a conversion, and a
very effectual one, too, it is difficult to imagine what would
constitute a conversion.    The argument is that inasmuch as
the defendant was not aware of the plaintiff's title, he is not
liable after the sale.    It is not denied that he would be liable
if he had retained the property and refused to give it up.
Can the sale make any difference, when he thereby made
property of him, and has the proceeds in his pocket?    The
sale was an act by which the plaintiff was wholly deprived
of his property, and it was not the less his property because
the defendant was not aware of his title, and purchased from
another.    If the defendant is not liable, the plaintiff is with-
out redress, as the former holders stand on the same footing.
But there is no weight in the objection.    If authority were
needed to support the position, it may be found in *Cooper* v.
*Chitty,* 1 Burr, 20, where the sheriff levied upon the goods
of a bankrupt after an act of bankruptcy committed of which
he was ignorant; in an action by the assignee he was held
guilty of a conversion.    And in *Broxham* v. *Hubbard,* 5 Ea.
Rep., 407, it was held that a sale of ship which was after-
wards lost at sea, by the defendant, who claimed under a
defective conveyance from a trader before his bankruptcy,
was a sufficient conversion to enable the assignees of the
bankrupt to maintain trover without demand and refusal."
If a defendant is in possession of a chattel, he cannot be
made liable in an action of claim and delivery until demand
and refusal, so long as he  simply retains  the  possession
thereof.    But when he sells the chattel, this is a conver-
sion—an act of wrong—and renders him liable without a
demand, although he may not have known that the plaintiff
was owner of the chattel.

There is, however, another reason why the judgment of
the Circuit Court should be affirmed.    His Honor, the Cir-
cuit Judge, says: "The defendants converted the title when
they sold her wrongfully, and action lies against them for
the mare *or her value.*"    No doubt the Circuit Judge ren-

dered judgment for the mare or her value, so as to give the defendants the opportunity of returning the property *in specie;* but this did not render null and void that part of the judgment allowing the plaintiff $50, the value of the mare, as he had the right to bring an action to recover possession of the chattel or damages for the conversion thereof. In the case of *Williams* v. *Irby,* 16 S. C., 374, the Court quotes with approval the following language from *Joplin* v. *Carrier,* 11 S. C., 327, to wit: "The plaintiff had a right to demand either damages for the taking and detention in trover for conversion or the return of the property, with damage. The Code has not changed the rights of parties in this respect * * * It is for the plaintiff to elect which form of remedy he will pursue. It cannot be objected that the plaintiff's demand in the trial justice court being for the recovery of a wagon and harness and damages for the detention thereof, it, therefore, bound him as an election as to the form of judgment. Whether a complaint in a Court of record would have that effect need not be considered, but no such effect can be claimed for informal pleadings in a trial justice court. The case then should proceed to judgment according to the rights of the parties." The judgment in the case before the Court was "according to the rights of the parties." We do not think the case of *Paysinger* v. *Shumpard,* 1 Bail., 237, cited by Mr. Chief Justice McIver, militates against the views herein expressed. That case did not decide that the plaintiff was not entitled to damages, but that he could not recover the *proceeds* of sale. This distinction is observed in the case of *Graham* v. *Seignious,* 53 S. C., 137, in which the Court says: "If the defendant received and disposed of the cotton mentioned in the complaint, having *actual* notice of the plaintiff's prior lien for rent, then he became liable, not for the value of the cotton or its proceeds, but for the damages which the plaintiff sustained by reason of the impairment of the security which the plaintiff had for enforcing payment of his lien for rent. *Heath* v. *Haile,* 45 S. C., 642."

For these reasons, we concur in affirming the judgment of the Circuit Court.

Mr. Chief Justice McIver, *dissenting.* Being unable to concur in the conclusion reached by Mr. Justice Pope in his opinion, I propose to state as briefly as practicable the ground of my dissent. If the mare in dispute was not in possession of the defendants at the time the action was commenced, then it seems to me clear, that no action to recover the possession of such animal from the defendants could be maintained, unless it was shown that the plaintiff had, *before* the mare was sold to McKnight, demanded possession thereof from defendants, and that defendants had refused or failed to comply with such demand. In *Paysinger* v. *Shumpard,* 1 Bail., 237, it was held, one coming *into* possession of personal property subject to the lien of an execution, does not incur a personal liability to the execution creditor, nor can the latter maintain an action against him for the price which he received on a subsequent sale of such property, for the lien is on the property only. In that case the property belonged to one Smith, against whom the plaintiff had recovered judgment, and had entered execution thereon in the sheriff's office. The defendant, who was fully aware of the existence of this lien, bought the property (cotton) from Smith, and afterwards sold it. Thereupon the plaintiff demanded from the defendant the proceeds of sale, and upon refusal brought action to recover the same as money had and received by the defendant to the use of the plaintiff. It is true, that in the case just cited, the lien was a general and not a specific lien, but in the subsequent case of *Strunberger* v. *McSween,* 14 S. C., 35, the same doctrine was applied where the lien was specific. It seems to me that this doctrine is sustained by reason as well as by authority. If an innocent purchaser in good faith acquired personal property and afterwards sells the same without notice by demand or otherwise, that any other person has a title to such property, it would be manifestly unjust that he should be liable to an action for the recovery of the possession of

such property, after he had parted with the possession without notice, or that he should be liable to an action for the proceeds of the sale of such property. He ought not to be liable to an action for claim and delivery, because sec. 299 of the Code (originally sec. 301) requires that the verdict and judgment in such a case must (if for the plaintiff) be in the alternative, either that the defendant surrender the property sued for, or in case this cannot be done, pay its value to the plaintiff. As is said in *Finley* v. *Cudd*, 42 S. C., at page 127, the real object of this provision of the Code "is of a twofold character—first, to protect the rights of the true owner to regain the possession of his property in specie, if practicable. Secondly, to save the party who may be innocently, but illegally, in the possession of the property of another from being compelled to pay such value as the jury may see fit to place upon the property, by giving him the alternative of returning the property to its rightful owner, and only paying such damages for its detention as may be determined to be proper." So, also, the party ought not to be subjected to an action for the amount for which he sold the property to a third person without any notice of the claim of the plaintiff, for two reasons: 1st. He may have sold the property on a credit, and the purchase money may never be received by him. 2d. Because he may be required to refund the price which he may have received to his vendee, and if he should also be required to pay the amount so received to the real owner of the property, that would be requiring him to pay the same money twice, which, of course, would be unjust. The remedy of the plaintiff, therefore, is to follow the property into the hands of the person (McKnight), to whom it was sold, in whose possession it now is, as appears by the testimony in this case. Of course, if it had been made to appear in this case, as it was made to appear in *Dudley & Caston* v. *Green,* 46 S. C., 199, that the plaintiff had demanded possession of the mare from the defendants before they sold the animal to McKnight, and such demand had been refused, or if the defendant had been noti-

8—60

fied of the claim of the plaintiff before such sale was made, then probably the result would have been different. But in this case nothing of the kind appears. It is true, that the mortgage held by the plaintiff was recorded, which was constructive notice to the defendants that the plaintiff *had a lien on* the property; but such mortgage was not notice that plaintiff had any title to the property, and there is no evidence tending to show that defendants had any notice that plaintiff claimed the property as his own at the time they sold the mare to McKnight, and surely it will not be contended that if a party buys property covered by the lien of a mortgage, and afterwards sells the same to a third person, that he thereby renders himself liable to an action to recover the possession of such property, or to an action for the proceeds of such sale. The plaintiff's remedy in such a case is to enforce his lien upon the property in the hands of the person who has possession of it. The plaintiff had a complete remedy by seizing the mare in the hands of McKnight, who, according to the testimony, had possession of the mare at the time of the trial of this case; and I am unable to perceive any reason why he did not resort to that remedy. It is true, that the Circuit Judge in his decree does say, "The defendants converted the title when they sold her (the mare) wrongfully"—and stress is laid upon the use of the word "wrongfully"—but as there is no evidence whatever that the defendants committed any wrong when they took the mare from Calvin Cooper under their mortgage, or that they supposed, or had any reason to suppose, that they were doing any wrong to any one in selling the mare to McKnight, the necessary inference is that the Circuit Judge used the word "wrongfully" in the sense of the word "illegally," for all the testimony shows that the defendants took the mare from Calvin Cooper under the honest but mistaken belief (as the event proves) that they had the right to do so, and that the defendants cannot properly be said to have *wrongfully* sold the mare to McKnight, though, as it now appears, they did *illegally* sell the mare.

The case of *Ladson* v. *Mostowitz,* 45 S. C., 388, is not in point, for the question there arose upon a demurrer to the complaint, in which it was alleged that the defendant, Mostowitz, had wrongfully taken the property sued for from the possession of the plaintiffs, and the Court held that this allegation, being admitted by the demurrer, was sufficient to constitute a cause of action, and overruled his demurrer. The implication from what is said in this case seems to be that while the further allegation in the complaint that Mostowitz had sold the property, might defeat the action for *claim and delivery,* yet the allegation that he had wrongfully taken the property from the possession of the plaintiffs would be sufficient to constitute a cause of action for damages; and as the rule is that a demurrer of this kind—based upon the ground that the facts stated in the complaint are not sufficient to constitute a cause of action—cannot be sustained "if the facts stated in the complaint are sufficient to constitute *any* cause of action," and quoting from *Burr* v. *Brantley,* 40 S. C., 540: "even though such facts may not be sufficient to sustain the particular cause of action upon which the complaint may seem to be based." It is manifest, therefore, that the case, so far from sustaining the plaintiff, rather implies the contrary. In the case of *Dudley & Caston* v. *Green, supra,* as has been stated above, there was a demand for the possession of the property *before* the sale was made, and the decision in that case is placed, distinctly, upon the ground that such demand was made while the defendant was in possession of the property, and refused; and that the fact, that the defendant *subsequently* sold the property, could not defeat plaintiff's right of action which accrued prior to the . sale. The other case of *Finley* v. *Cudd, supra,* which has been cited, does not seem to be in any way applicable to this point.

I agree that the first exception should not be sustained, because, while a mortgage may be so drawn as to cover after-acquired personal property, yet, as I understand it, the mortgage must contain language showing that such

was the intention of the parties at the time of the execution of the mortgage; and here it does not appear that the mortgage under which the defendants claim the mare in dispute, contained any such language.

I think, therefore, that the second exception should be sustained, and that a new trial should be granted.